UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| LLOYD T. ELDER, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:23-cv-00337-JRS-MKK |
| | ) | |
| BOBBIE RIGGS, | ) | |
| B. BUTLER, | ) | |
| | ) | |
| Defendants. | ) | |

**Entry Granting Motion for Summary Judgment and Resolving Other Pending Motions**

Plaintiff Lloyd Elder filed this action contending that Defendants Bobbie Riggs and B. Butler violated his constitutional rights by failing to provide him with his required medical diet. Dkt. 54. Nurse Riggs moves for summary judgment, arguing that Mr. Elder failed to exhaust his available administrative remedies as to his claims against her as required by the Prison Litigation Reform Act ("PLRA") before filing this lawsuit.[1] After briefing was closed on the summary judgment motion, Mr. Elder filed a "Motion to Acknowledge, Identify, and Facts," dkt. 100, and a "Motion to Identify and Response to the Defendant RN. Bobbie Riggs," dkt. 113. For the reasons explained below, those motions, dkts. [100] and [113], are **denied**. In addition, Nurse Riggs's motion for summary judgment, dkt. [87], is **granted**, and Mr. Elder's claims against Nurse Riggs are **dismissed without prejudice**. Mr. Elder's collateral motion asking the Court to issue a no-contact order to prevent Nurse Riggs from interacting with him, dkt. [106], is also **denied**.

---

[1] Defendant Butler does not raise an exhaustion defense. *See* dkt. 74.

# I.
# Summary Judgment Motion

## A. "Motion to Acknowledge, Identify, and Facts (Dkt. 100)"

More than three weeks after Nurse Riggs filed her summary judgment reply, Mr. Elder filed a document titled, "Motion to Acknowledge, Identify, and Facts." Dkt. 100. The motion is effectively a surreply to Nurse Riggs's reply. But under Southern District of Indiana Local Rule 56-1(d), summary judgment surreplies are permitted only when the moving party cites new evidence in its reply or objects to the admissibility of the evidence cited in the response. S.D. Ind. L.R. 56-1(d). And, even then, the surreply must be filed within seven days after the reply is served and must be limited to the new evidence and objections. *Id.* Mr. Elder's surreply fails on all counts. It was filed too late and without explanation for the delay. Moreover, Nurse Riggs did not cite new evidence in her reply. *See* dkt. 96. Nurse Riggs did argue that some of the factual statements in Mr. Riggs's response were not supported by citations to verified testimony. *Id.* at 4, 5. To the extent that argument represents an objection to the admissibility of Mr. Elder's evidence, Mr. Elder did not limit his surreply to that issue. Indeed, the surreply does not address that issue at all. Accordingly, Mr. Elder's attempted surreply is not authorized, and the Court declines to consider it. Thus, his "Motion to Acknowledge, Identify, and Facts," dkt. [100], is **denied**.

## B. "Motion to Identify and Response to the Defendant RN. Bobbie Riggs" (Dkt. 113)

Several months after Mr. Elder filed the "Motion to Acknowledge, Identify, and Facts," the Court ordered Nurse Riggs to file copies of documents related to a particular grievance. Dkt. 111. Nurse Riggs filed the documents along with a notice, dkt. 112, and about 10 days later, Mr. Elder filed a "Motion to Identify and Response to the Defendant RN. Bobbie Riggs." Dkt. 113. Most of that motion is unrelated to the notice and documents that Nurse Riggs filed and consists of

additional arguments in support of Mr. Elder's response in opposition to Nurse Riggs's summary judgment motion. Those arguments represent more unauthorized attempts at a surreply.

In the motion, Mr. Elder also appears to be trying to introduce evidence of another grievance that he allegedly submitted about the issues in this lawsuit—a grievance that was not mentioned in or attached to his summary judgment response brief. Dkt. 113 at 1 ("On 9/12/2022 I filed a grievance."); dkt. 113-1. The grievance is not stamped received, does not appear in the IDOC's official record of the grievances Mr. Elder filed that was submitted with Nurse Riggs's summary judgment motion, and bears no indicia that it was ever received by prison staff. Dkt. 113-1.

As explained, no surreply is authorized at this point of the proceedings. Mr. Elder also fails to explain why he could not have presented this grievance to the Court sooner or at least mentioned it. In addition, Mr. Elder's current motion states that he filed the new grievance on September 12, 2023, but that statement is not verified, so there is no admissible evidence that he filed the new grievance, let alone that he filed it properly and complied with all the steps for exhausting the grievance, which are discussed in Section I(D)(1), below. As a result, the Court declines to consider the new grievance.

Finally, in his motion, Mr. Elder notes that, when Nurse Riggs filed the notice accompanying the grievance documents she was submitting at the Court's direction, she mentioned that Grievance # 23-158459 was filed after this lawsuit was filed. He then offers argument as to why that fact is not dispositive. Dkt. 113 at 1–2. But Nurse Riggs does not argue that Grievance # 23-158459 was filed too late to satisfy the exhaustion requirement, *see* dkts. 96, 112, so there is no need for Mr. Elder to offer argument on that point.

For all of these reasons, the "Motion to Identify and Response to the Defendant RN. Bobbie Riggs," dkt. [113], is **denied**.

### C. Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

### D. Factual Background

At all times relevant to the claims in this suit, Plaintiff was incarcerated at Wabash Correctional Facility ("Wabash Valley"), a prison within the Indiana Department of Correction ("IDOC"). Dkt. 40.

### 1. Offender Grievance Process

The IDOC has a standardized offender grievance process which was in place during the time Mr. Elder alleges his rights were violated. Dkt. 88-1 at 2. Inmates receive information about the grievance process during their orientation at Wabash Valley. *Id.* Inmates also have access to a current copy of the grievance policy at the Wabash Valley law library and can request a copy at any time. *Id.* at 3.[2]

IDOC Policy and Administrative Procedures 00-02-301, Offender Grievance Process ("Offender Grievance Process") is the IDOC policy governing the grievance procedure and details how a prisoner must exhaust his administrative remedies using that procedure. *Id.* at 2, 6–20. During the relevant period, the grievance process consisted of three steps: (1) submitting a formal grievance following unsuccessful attempts at informal resolutions; (2) submitting a written appeal to the facility Warden/designee; and (3) submitting a written appeal to the IDOC Grievance Manager. *Id.* at 8. Successful exhaustion of the grievance process requires timely pursuing each step or level of the process. *Id.*

As to the second step, the policy provides:

---

[2] In his summary judgment response, Mr. Elder states that the policy was not available to him until November 2023, when it became available on his prison-issued tablet. Dkt. 94 at 1. That statement is not verified under penalty of perjury, so the Court disregards it. *See Gray v. Poor*, 2025 WL 2001549, at *2 (S.D. Ind. Apr. 5, 2024), *aff'd*, 2025 WL 251162 (7th Cir. 2025) (declining to consider statements in summary judgment response because they were not made under penalties of perjury); *see also Collins v. Seeman*, 462 F.3d 757, 760 n.1 (7th Cir. 2006) (district court properly disregarded unsworn statements at summary judgment); 28 U.S.C. § 1746 (setting forth requirements for unsworn declaration to substitute for affidavit).

If the offender is dissatisfied with the grievance response, they may appeal the response by completing the appropriate sections of State Form 45473, "Grievance Appeal." The completed State Form 45473, and any additional information, shall be submitted to the Offender Grievance Specialist within five (5) business days after the date of the grievance response.

*Id.* at 17. The policy also sets forth a general procedure governing extensions of time:

An offender who does not follow the established time limits in this procedure may have their grievance or appeal denied for failure to comply to the time frames unless they are able to show good cause. If there are extenuating circumstances which caused the offender a delay in submitting the grievance form within the time frames, the offender must document and submit the reason for the delay on a separate piece of paper with signature and date, and include with the appropriate appeal form or make a request for the specific form to the Offender Grievance Specialist for review. The Warden/designee shall approve or deny such offender delay requests.

*Id.* at 19.

### 2. Procedural History and Plaintiff's Allegations

Mr. Elder filed his original complaint in this case on July 10, 2023. Dkt. 2. As relevant to his claims against Nurse Riggs, he alleged as follows: Non-party Dr. Samuel Byrd approved him to have a medical diet in July or August 2022 because Mr. Elder was suffering from throat cancer. The diet was supposed to consist of soft food, no oatmeal, and double protein. Despite that, he received apples on his trays. An officer called the medical department to fix the issue, and Nurse Riggs put him on a liquid diet for seven days, after which the liquid diet was discontinued.

Mr. Elder filed his amended complaint on February 8, 2024. Dkt. 40. As relevant to his claims against Nurse Riggs, he alleges as follows: When he arrived at Wabash Valley, Nurse Riggs knew he had cancer but failed to contact Dr. Byrd. As a result, Mr. Elder did not see Dr. Byrd for four months. At that point, Dr. Byrd approved him for a high calorie, high protein, soft diet with no oatmeal. Dr. Byrd approved the diet again a month later. Despite that, Defendant Butler and non-party Aramark kept putting apples on his trays with no protein. Mr. Elder notified an officer that he was being served apples. The officer made a call to try to fix the problem, at which point

Nurse Riggs put Mr. Elder on a full liquid diet. Dr. Byrd objected and put Mr. Elder back on the previous medical diet. After that, Nurse Riggs tried to change his diet again. Problems with the diet continued, and non-party Aramark employee Daniel Bedwell asked medical to send him an e-mail confirming Mr. Elder's proper diet. Mr. Elder's diet was fixed for a week, but then Defendant Butler started giving Mr. Elder the wrong trays again, saying that Aramark could not accommodate his medical diet. Mr. Bedwell told Mr. Elder that he was trying to fix Mr. Elder's diet, but Defendant Butler kept stopping him. Mr. Elder spoke to Defendant Butler three times about the problems with his diet. Defendant Butler said that he would fix the problem, but has never done so. Finally, Mr. Elder alleges, "Over the course of (1) one year my medical diet has changed (11) times by Riggs and Butler." *Id.* at 2.

### 3. Plaintiff's Participation in the Grievance Process

In his summary judgment response, Mr. Elder pointed to multiple grievances to support his argument that he had properly exhausted available administrative remedies. *See generally* dkt. 94. The Court summarizes them separately, below.

### a. Grievances Filed Before the Original Complaint

### i. April 2, 2023: Grievance # 153777

On April 2, 2023, Mr. Elder signed a grievance that was assigned Grievance # 153777. It read:

> On 4-2-2023, once again medically proscribed diet was not provided Grievant Elder #289043. On 2-25-2023 medical diet approved, to end 8-25-2023. As of 4-2-2023 diet has not once been provided.

Dkt. 88-1 at 25 (errors in original). He requested the following relief:

> That medical diet ordered be provided, in order for health to improve. And for interference to discontinue this date forth.

*Id.* The grievance specialist's response is dated April 14, 2023, and states:

> Your grievance has been received and reviewed. Records show that your prescribed diet is on the diet list. GRIEVANCE RESOLVED.

*Id.* at 28.

Mr. Elder signed his appeal on May 1, 2023, which was more than five business days after April 14. *Id.* Prison records show that the appeal was received by the grievance specialist on May 4. *Id.* In the appeal, Mr. Elder stated that records showed that his medical diet was on order, but that the diet was not getting to him as ordered because he was not getting the high protein or soft trays he needed. *Id.* The appeal itself does not explain why it was untimely, and Mr. Elder did not submit a separate request for an extension of the deadline. *Id.* at 4. The grievance specialist returned the grievance to Mr. Elder on May 4, 2023, stating:

> Your appeal response was received with no reason for delay. Sent on 4/14/23 and due back no later than 4/22/23. Received by this office on 5/4/23. No further relief available.

*Id.* at 27. Mr. Elder did not attempt to correct the grievance or submit a request to extend the appeal deadline. *Id.* at 21.[3]

### ii.    May 21, 2023: Grievance # 23-145076

On May 21, 2023, Mr. Elder signed a grievance that was assigned Grievance # 23-145076. Dkt. 94-1 at 9. The grievance read:

> On 4-2-23 I put in a medical grievance on my medical diet. Grievance specialist M. Gilbert replied back—records show medical diet is ordered and I'm on the diet list. But my medical diet isn't making it to the house. Medical diet as shown will be attached. Aramark is still giving me oatmeal & apples & no high protein.

---

[3] In the motion that served as a surreply, Mr. Elder stated that, after he received the returned appeal, he "tried replying back to no avail." Dkt. 100. As explained above, the Court does not consider this statement because Mr. Elder's surreply was unauthorized and, in any event, the statement was not made under penalty of perjury.

*Id.* His requested relief was "fix my diet as prescribed." *Id.* He attached a copy of an order from Dr. Byrd prescribing a high protein, soft, no-oatmeal diet running from February 25 to August 25, 2023. *Id.* at 10.

Nurse Riggs did not file a copy of this grievance with her summary judgment motion, apparently because she deems it not to have related to Mr. Elder's claims against her. Mr. Elder cited to this grievance as a basis for exhaustion in his response, but he did not file copies of the response to this grievance or a copy of any Warden/designee response. After Mr. Elder cited to this grievance, Nurse Riggs did not file a copy of the complete documentation related to it, thereby leaving the record somewhat spotty as to the timeline of Mr. Elder's appeal(s) and the response(s) to those appeals.[4]

Mr. Elder filed a copy of an appeal for this grievance, which is dated June 23, 2023. *Id.* at 7. The appeal was stamped as received by the grievance department on June 26, 2023. *Id.* That appeal reads:

> Since April of 2022 I was on a medical diet which came from my cancer specialist. I went from a renal diet w/soft no oatmeal. The oatmeal is an allergy and soft is because cancer of my throat. In June of 22 over an apple situation [Nurse] Riggs switched me and punished me with a liquid diet for (7) days. After seeing Dr. Byrd at the end of July, he put me back on my medical diet. After speaking to Butler about my diet issues about apples, oatmeal and no protein, he said he will try to fix it. This was about November or December. I went to doctor visit in Terre Haute, per order that was high protein/soft tray/Ensure and no oatmeal. So Dr. Byrd ordered this through Aramark on Feb. 25, 2023 & he sent me a copy of the order. Up to today['] date after receiving grievance from Madison Gilbert 6/14/23. She claims its resolved because Aramark was looking into to fix it. As of 6/24/23 Aramark has not fixed my tray. I still get oatmeal, apples, and equal amount of protein, in which, does not equal to a high protein diet. I will be seeing Dr. Byrd

---

[4] Nurse Riggs's counsel is reminded that defendants bear the burden of proving that a plaintiff did not exhaust available administrative remedies, and the plaintiff is not required to prove that he did exhaust. Going forward, when a plaintiff points to a grievance as a possible basis for exhaustion and provides incomplete documentation as to that grievance, counsel should file a complete set of documentation with the reply so that the Court has a full understanding of the disposition of the grievance.

> this week to try to resolve this issue again. I spent over $10,000 in commissary to keep my protein level up and my weight up for future cancer treatments.

*Id.* at 7.

As best the Court can tell from what Mr. Elder has filed, that appeal went straight to the Department Offender Grievance Manager because the next document in the record is a document showing that Isaac Randolph, who is identified as the final reviewing authority, responded on July 13, 2023, stating that he agreed with the facility-level response. *Id.* at 5; *see also id.* at 40. That response date is roughly in line with what the response date should have been if Mr. Elder's appeal was a second-level appeal. In addition, Mr. Elder filed a copy of a Request for Interview form he submitted on August 18, 2023, reflecting that he believed that he had submitted a second-level appeal in July and was inquiring as to why he had not received a response yet. *Id.* at 6. The grievance specialist responded that Mr. Randolph was the final reviewing authority and that the grievance was fully exhausted. *Id.* at 5.

### b. Grievances Filed After the Original Complaint and Before the Amended Complaint

#### i. July 28, 2023: Grievance # 23-155932

Mr. Elder submitted a grievance dated July 28, 2023, which was assigned Grievance # 23-155932. *Id.* at 30. The grievance read:

> This is an Amended relief from Grievance #23-150823 that was filed on 7-23-23.

*Id.* The requested relief was:

1. Be able to go to the law library as needed.
2. Be moved to another class room so I can get my G.E.D.
3. Be able to go to medical as needed.
4. Also would like to file outside charges against Mr. Vicke for assult and battery against a handicap.

*Id.* (errors in original). Mr. Elder did not file any other documents related to this grievance, but Nurse Riggs filed a grievance report stating that appeal/level of the grievance was "Return or receipt of Grievance." Dkt. 88-1 at 21.

Grievance #23-150823, which is referenced in this grievance, is not in the record, but Mr. Elder filed a document suggesting that it was returned to him because it did not relate to only one event or issue. *Id.* at 41.

### ii.    August 19, 2023: Grievance # 23-157301

On August 19, 2023, Mr. Elder submitted a grievance that was assigned Grievance # 23-157301. Dkt. 88-1 at 34. In the grievance, he complained that Nurse Riggs compiled a list of names of people in D-House that would no longer be able to receive Band Aids, medical/hygienic wipes, and rubber gloves. *Id.* He also complained that the pharmacy had failed to provide him with water pills. *Id.* Mr. Elder did not mention any problems with his diet. *Id.* The grievance specialist responded to this grievance, dkt. 94-1 at 2, but Mr. Elder did not appeal, dkt. 88-1 at 4.

### iii.    September 7, 2023: Grievance # 23-158459

Mr. Elder filed a grievance dated September 5, 2023, that was stamped "received" by the grievance office on September 7 and assigned Grievance # 23-158459.  It read:

> This mornings breakfast tray came in with apples on it for me which goes against the soft requirement standards. I requested for a new tray so I could take my morning medication (blood pressure and heart pills). The officer on the floor said she would have it replaced before I went to school at 8 am. For some unknown reason they sent us to school at 7:30 am. So there for I was not able to take my medication at that time. When I came back I asked the officer on the floor if they had brought the new tray. I was told no they did not. She had called the kitchen to have it replaced again. The kitchen replied to either deal with it and eat it, to go with out, or file a grievance. The issues with my medical prescribed tray has been going on for over a year and it seems that no one is able to get it right. I believe that if Aramark has this attitude then maybe they should be replaced. I also believe that this is cruel and unusual punishment.

Dkt. 112-1 at 1 (errors in original). He requested the following relief: "Fix the trays as requested and prescribed." *Id.*

The grievance specialist responded on September 20, 2023, stating:

> ARAMARK, B. BUTLER—Was the apple the only thing you couldn't eat on the tray? The apple on soft diet will be addressed by the diet line staff. GS FINDINGS—Aramark has addressed this with the diet line staff. GRIEVANCE RESOLVED.

*Id.* at 5.

Mr. Elder appealed, stating:

> Aramark and B. Butler were to address the apples on my tray. I am now recieving them on almost every tray and am still not recieving the high protein. The recieving of oatmeal has stopped. If they were to verify the medical diet it is high protien with sack soft tray no oatmeal. Therefore if its not getting fixed per the sargents saying its getting fixed and its not. The COs aren't calling anymore to try to fix.

*Id.* at 6 (errors in original). He wrote the following in the "Facility level appeal response" box on the appeal form: "To get the proper diet trays that I am prescribed." *Id.*

The grievance specialist returned the appeal because Mr. Elder improperly wrote in the "Facility level appeal response" box and directed him to fix the problem. *Id.* at 7. Mr. Elder resubmitted an appeal that was identical to the original, except that the portion written in the "Facility level appeal response" box was omitted. *Id.* at 8.

The Warden/designee responded on October 18, 2023, stating:

> Your grievance appeal and all related documents have been approved. You have not provided any additional information or documentation to support your claim or that would indicate that the answer to your formal grievance should be changed. Your diet is listed as soft/HPHC/no oatmeal, if an apple was provided in error, that is no reason to refuse the entire tray. APPEAL DENIED.

*Id.* at 10.

Mr. Elder checked the "disagree" box on the Warden/designee response on October 20, 2023. *Id.* That document also includes a handwritten note apparently from the grievance specialist

stating, "Sent to COA 10/24," which the Court understands to mean that she sent the second-level appeal to the Department Offender Grievance Manager on October 24. *Id.* Although the Grievance Manager's response is not in the record, the grievance report Nurse Riggs filed also shows that the Grievance Manager responded to Grievance # 23-158459, indicating that Mr. Elder filed the second-level appeal. Dkt. 88-1 at 21.

###### iv.   October 5, 2023: Grievance # 23-161306

The parties filed copies of documents showing that Mr. Elder filed a grievance on October 5, 2023, which was assigned Grievance #23-161306. Dkt. 94-1 at 35; *see also* dkt. 88-1 at 21. The grievance is not in the record, but Nurse Riggs filed a computer report showing that the grievance was about "unprofessional/inappropriate conduct." Dkt. 88-1 at 21. The grievance response and Warden/designee responses are not in the record, but Mr. Elder filed a copy of the Grievance Manager's response to his second-level appeal, which reads:

> Mr. Elder, Your grievance appeal and all attached documents have been reviewed. You're grieving being verbally assaulted in the elevator by staff. According to Staff/Warden there is no proof of your allegations and it is your word against his. I concur with the Facility level responses. Grievance Appeal Addressed Denied.

Dkt. 94-1 at 35.

###### v.   October 30, 2023: Grievance # 23-162646

Mr. Elder filed a grievance dated October 26, 2023, which was assigned Grievance # 23-162646. Dkt. 94-1 at 23. That grievance read:

> The trays are mostly coming in as the soft tray like it should be. Still having some apples on tray. They however do not have the double protien on them that is prescribed. The HCHP dinner sac that comes in as a soft has been coming in with apples in it now as well. CO Boone has personally been calling to get the issues fixed when on shift. This is or has been a never end cycle of mess ups. I was told by B. Butler it would be fixed and to not eat the apples that when they (the CO's) call it is to receive the right fruit. I have talked to a few kitchen worker that said Butler said to continue the making of trays and sacks for diets as is.

*Id.* (errors in original). He requested the following relief: "To get the proper diet I should be receiving per medical ordered for my health." *Id.* The grievance specialist responded:

> FOOD SERVICES, D. BEDWELL—I have spoken to the officer in control we discussed the issues you describe. double portions are not on the HP/HC diet this diet is just the regular menu with an added diet sack in the evening. I asked the officer in control to contact me if you bring an issue to them about your diet. Labeling has been changed to make sure your diet sack is easy to identify. If issues arise the tray is to be corrected immediately. I cannot confirm nor deny if an apple was served to you at this time. GS FINDINGS—Double portions are not on the HP/HC diet, this diet is just the regular menu with an added diet sack in the evening. Labeling has been changed to make sure that your diet sack is easy to identify. GRIEVANCE RESOLVED.

*Id.* at 22 (errors in original).

Mr. Elder appealed on November 17, 2023. *Id.* at 21. The appeal read:

> After speaking with medical confirming I am on high protien plus HP/HC sack, no oatmeal, soft. This has been confirmed by medical more than once. I have recieved an apple in my HP/HC sac in the last two weeks and have also recieved oat meal on my tray that had the no oatmeal tag on it. As of today (11-27-23) the officers, sergeants, and I can confirm that statement of the apples and oatmeal. All of us listed can confirm that it comes in periods of time. That is right and same as wrong.

*Id.* (errors in original). The Warden/designee denied the appeal. *Id.* at 19.

The second-level appeal is not in the record, but Mr. Elder submitted a document showing that he filed such an appeal on December 8, 2023, and that the grievance specialist transmitted it to the Grievance Manager on December 12. *Id.* Nurse Riggs also filed a report showing that the Grievance Manager responded to Grievance # 23-162646, indicating that Mr. Elder filed the second-level appeal. Dkt. 88-1 at 21.

### vi.    December 11, 2023: Grievance # 23-165862

Mr. Elder filed a grievance dated December 11, 2023, which was assigned Grievance #23-165862. Dkt. 94-1 at 29. The grievance identifies the "Date of incident" as 12/8/23. It is stamped as received and reads:

My trays have been coming in with the portions getting smaller even though part of my medical diet is high calorie and it is also not coming in with the beverage pack, salt + pepper packs and no butter cups even though COs are being told it will be fixed its only getting worse.

*Id.* (punctuation errors in original). He requested the following relief: "Get my diet correct." *Id.*

The grievance specialist responded on December 28, stating:

ARAMARK, B. BUTLER—I will monitor your tray from Dining making sure that your tray is in accordance with the prescribed diet. GS FINDINGS—Aramark is monitoring this, however, if you are missing items upon delivery of your tray, you need to make custody aware of this so they can fix the issue.

*Id.* at 27. It is not entirely clear what happened after that, but it appears that Mr. Elder's first-level appeal may have been returned as untimely. *See id.* at 28.

### c.  Grievances Filed After the Amended Complaint

Mr. Elder filed several grievances after he filed his amended complaint on February 8, 2024, which the Court summarizes as follows[5]:

- February 19, 2024: Grievance #24-171570: In this grievance, Mr. Elder complained that he had not been seen by a cardiologist for his serious heart problems. Dkt. 94-1 at 33.

- March 11, 2024—Grievance #24-173187: In this grievance, Mr. Elder complained that he was not consistently receiving his prescribed medical diet. Mr. Elder filed documents showing that he filed a first-level appeal but no documents about the further disposition of this grievance. *See* dkt. 94-1 at 31–32, 36–39.

### E.  Discussion

The PLRA requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to

---

[5] The Court does not delve into these grievances in detail because, as discussed below, they were, as a matter of law, filed too late to satisfy the exhaustion requirement.

all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). As a result, an inmate who brings suit before completing any grievance procedure has failed to exhaust administrative remedies, even if the process is completed after the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

"To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (*citing Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

"Because exhaustion is an affirmative defense," Nurse Riggs faces the burden of establishing that "an administrative remedy was available and that [Mr. Elder] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id*. (internal quotation omitted).

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). "An inmate must comply with the administrative grievance process that the State establishes.…" *Id*.; *see also Ross*, 578 U.S. at 639 (the mandatory language of the PLRA "means a court may not excuse a failure to exhaust…").

Nurse Riggs has met her burden of proving that Mr. Elder "had available [administrative] remedies that he did not utilize." *Dale*, 376 F.3d at 656. The undisputed record evidence reflects that Mr. Elder was aware of the grievance process and failed to complete the process consistent with the steps outlined in IDOC's Offender Grievance Process. Specifically, none of the grievances that could have potentially satisfied the exhaustion requirement for this case did so.

Two of the grievances—Grievance #24-171570 and Grievance #24-173187—were submitted after he initiated this lawsuit and even after he filed the amended complaint in this case. They thus came too late to meet the exhaustion requirement for the claims against Nurse Riggs. *See Ford*, 362 F.at 398.

Three of them—Grievance #23-155932, 23-157301, and 23-161306—were not related to the diet issues in this case at all.[6]

One of them—Grievance #23-153777—was about the problems he was having with his medical diet and arguably suggested that some of the fault rested with medical staff. But, as discussed above, Mr. Elder's first-level appeal was too late under the terms of the grievance policy, and he also did not follow the procedures for obtaining an extension of time. Thus, he did not fully exhaust that grievance in accordance with the policy.

That leaves four grievances—Grievance #23-145076, 23-158459, 23-162646, and 23-165862—which the Court will refer to collectively as the "Kitchen Grievances." The grievance policy does not require inmates to name all defendants in their grievances, and a grievance is not

---

[6] The Court does not understand Mr. Elder to be relying on Grievance #23-150823 to support his exhaustion argument, but to the extent he does, Grievance #23-155932 was framed as a resubmission of Grievance # 23-150823, which suggests that Grievance #23-150823 did not relate to Mr. Elder's diet, either. In addition, the record evidence shows that Grievance #23-150823 was returned to Mr. Elder because it related to more than one issue and that he chose to file a new grievance— #23-155932—rather than correct and resubmit #23-150823. That is, he did not fully exhaust Grievance #23-150823. *See* dkt. 88-1 at 21 (grievance report showing that Grievance #23-150823 progressed only to the level of "Return or receipt of grievance).

"*per se* inadequate simply because an individual later sued was not named in the grievances." *Jones v. Bock*, 549 U.S. 199, 219 (2007). But an inmate must give the prison "a fair opportunity to address his complaint" prior to filing suit, *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011), which means that he must fully exhaust a grievance that "provides notice to the prison of the nature of the wrong for which redress is sought." *Jackson v. Esser*, 105 F.4th 948, 959 (7th Cir. 2024) (cleaned up). Put another way, for a grievance to suffice for exhaustion purposes, it must give the prison sufficient notice of the issues being pursued in the lawsuit. *Id.*

The Kitchen Grievances do not meet this bar, at least as to Mr. Elder's claims against Nurse Riggs, which are that she knew he had cancer but delayed in referring him to Dr. Byrd after he got to Wabash Valley, switched him to a full liquid diet, and changed his medical diet an unspecified number of times "over one year." *See* dkt. 40. None of the Kitchen Grievances mention that he was delayed in seeing Dr. Byrd after his arrival at Wabash Valley. And he never filed a grievance about being placed on a liquid diet, either. The appeal of Grievance #23-145076 mentions that Nurse Riggs put him on a liquid diet for a week in June 2022, but the grievance itself was not about that issue. It was filed in 2023 and was about the kitchen failing to provide the diet that had been ordered at that time. Read in context, the reference to the liquid diet in the appeal was a background detail, not something being grieved. After all, the plain text of the appeal shows that the liquid diet issue had been resolved for approximately a year by the time of the appeal, so there was no reason for the prison to think that Mr. Elder was complaining about it when he filed his appeal. In addition, the grievance itself does not mention the liquid diet, and inmates are not allowed to raise new issues in grievance appeals. Dkt. 88-1 at 17 ("The appeal may contain additional facts or information regarding the original issue and may raise concerns regarding the response from the previous level, but it shall not raise new or unrelated issues.").

The Kitchen Grievances also did not provide the prison with any notice that he was having diet problems because Nurse Riggs—or anyone else in the medical department—was changing the orders setting forth the parameters of his medical diet or directing kitchen staff not to comply with the diet that had been ordered. To the contrary, he affirmatively and repeatedly suggested that the problem rested with kitchen staff by stating that his medical diet had been ordered and asking that he be given the diet that had been prescribed to him. *See, e.g.*, dkt. 88-1 at 9 (Grievance #23-145076, stating, "[R]ecords show my medical diet is ordered . . . , but my medical diet isn't making it to the house . . . . Aramark is still giving me oatmeal & apples & no high protein."); dkt. 112-1 at 1 (Grievance #23-158459, stating "I requested a new tray . . . . The officer on the floor said she would have it replaced . . . . When I came back I asked . . . if they had brought the new tray. I was told they did not. . . . I believe that if Aramark has this attitude then maybe they should be replaced . . . . Fix the trays as requested and prescribed."); dkt. 94-1 at 23 (Grievance # 23-162646, stating, "The trays are mostly coming in as the soft tray like it should be. Still having some apples on tray. They however do not have the double protien on them that is prescribed . . . . CO Boone has been personally calling to get the issues fixed when on shift. I was told by B. Butler it would be fixed . . . . To get the proper diet I should be receiving per medical ordered for my health."); dkt. 94-1 at 29 (Grievance # 23-165862, stating, "My trays have been coming in with the portions getting smaller even though part of my medical diet is high calorie . . . . Even though the COs are being told it will be fixed its only getting worse.").

That is, while Mr. Elder provided the prison with an opportunity to correct the problems kitchen staff were having with providing him with his prescribed diet, he did not give them notice or an opportunity to investigate if the contents of his prescribed medical diet were being improperly changed. As a result, these grievances did not serve to exhaust his claims against Nurse Riggs. *See*

*King v. Dart*, 63 F.4th 602–09 (7th Cir. 2023) (plaintiff failed to exhaust claim that correctional officer failed to get him medical care where his grievance stated only that medical staff delayed his care and failed to provide notice that officer committed any wrongdoing); *Hacker v. Dart*, 62 F.4th 1073, 1084 (7th Cir. 2023) (deaf inmate did not exhaust administrative remedies as to complaint about access to medication where grievance only challenged lack of access to listening device; grievance did not include any facts suggesting that reason inmate wanted listening device was because he could not hear medical staff calling his name when dispensing medication or otherwise suggest there was problem with receiving medication).

In short, Mr. Elder did not complete the available administrative process as required the PLRA as to his claims against Nurse Riggs. *Reid*, 962 F.3d at 329. The consequence of his failure to exhaust his administrative remedies, in light of 42 U.S.C. § 1997e(a), is that his claims against Nurse Riggs must be dismissed without prejudice. *Id*; *see also Ford v. Johnson*, 362 F.3d 395, 401 (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").[7]

### IV. Motion for No Contact Order

Mr. Elder filed a "Motion for No Contact Order" asking the Court to "put a no contact" on Nurse Riggs "for medical harassment and retaliation," claiming that Nurse Riggs has been retaliating against Mr. Elder for filing this lawsuit. Dkt. 106. This motion is essentially a motion for a preliminary injunction. Now that Mr. Elder's claims against Nurse Riggs have been dismissed, she is no longer a party, and his claims against her have dropped out of the case. The Court cannot

---

[7] In his response, Mr. Elder accuses the Grievance Specialist who signed the affidavit supporting Nurse Riggs's summary judgment motion of perjury and asks the Court to hold her and Nurse Riggs's attorney in contempt. Dkt. 94. The basis of the argument is that the Grievance Specialist averred that she had provided the Court with copies of all grievances related to Mr. Elder's claims against Nurse Riggs, but she omitted some grievances that Mr. Elder thought were relevant. *Id.* The accusation of perjury is baseless. While the Grievance Specialist might have cast a wider net when identifying diet related grievances in her affidavit, she was ultimately correct that the grievances identified in her affidavit were the only ones that potentially put the prison on notice of Mr. Elder's claims against Nurse Riggs.

grant Mr. Elder injunctive relief because it cannot issue injunctions directing non-parties to take action, nor can it order injunctive relief that lacks a nexus to the underlying claims. *Maddox v. Wexford Health Sources, Inc.*, 528 F. App'x 669, 672 (7th Cir. 2013) ("An injunction, like any enforcement action, may be entered only against a litigant, that is, a party that has been served and is under the jurisdiction of the district court." (cleaned up)); *Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 636 (9th Cir. 2015) (holding that absent a nexus between underlying claims and request for injunctive relief, district court has no authority to grant injunctive relief). If Mr. Elder has new complaints about Nurse Riggs that post-date the filing of this lawsuit, he must pursue them through his prison's grievance process and, if necessary, by filing a new lawsuit.

### V. Conclusion

For the reasons explained above, Mr. Elder's "Motion to Acknowledge, Identify, and Facts," dkt. [100],  and "Motion to Identify and Response to the Defendant RN. Bobbie Riggs," dkt. [113], are **denied**. In addition, Nurse Riggs' motion for summary judgment, dkt. [87], is **granted**, and Mr. Elder's claims against Nurse Riggs are **dismissed without prejudice**. Finally, Mr. Elder's motion for a "no contact" order as to Nurse Riggs, dkt. [106], is **denied**.

Partial final judgment will not enter at this time. The Court will issue a scheduling order governing the development of Mr. Elder's claims against the remaining defendant by separate entry.

**IT IS SO ORDERED.**

Date:   5/9/2025

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

LLOYD T. ELDER, SR.
289043
WABASH VALLEY - CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Travis W. Montgomery
Bleeke Dillon Crandall, P.C.
travis@bleekedilloncrandall.com

Georgianna Q. Tutwiler
HUME SMITH GEDDES GREEN & SIMMONS
gquinn@humesmith.com